# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUKHAMADII ABDUVAKHIDOV,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, GOLDEN STATE ANNEX DETENTION FACILITY, et al.,<br><br>Respondents. | Case No. 1:25-cv-01060-EPG-HC<br><br>A-Number: 249-263-680<br><br>ORDER GRANTING FIRST AMENDED PETITION, DIRECTING RESPONDENT TO IMMEDIATELY RELEASE PETITIONER, DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT, AND DIRECTING CLERK OF COURT TO CLOSE CASE<br><br>(ECF Nos. 18, 34) |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 9, 10, 12.)

**I.**

**BACKGROUND**

Petitioner is a citizen of Kyrgyzstan who entered the United States on or about June 12, 2024 by crossing the United States/Mexico border. Petitioner has been in Respondents' custody since June 13, 2024. (ECF No. 34 at 4.[1]) In August 2024, Petitioner was found to have a credible fear of persecution should he be returned to Kyrgyzstan and was moved from expedited removal

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

1

proceedings to regular proceedings under Immigration and Nationality Act ("INA") section 240, 8 U.S.C. § 1229a, and charged with entry without inspection. (ECF No. 13-1 at 12.)

On March 13, 2025, an immigration judge ("IJ") ordered Petitioner removed but granted Petitioner withholding of removal to Kyrgyzstan. (ECF No. 13-1 at 22–23.) On April 11, 2025, the Department of Homeland Security ("DHS") filed a notice of appeal to the Board of Immigration Appeals ("BIA"). As DHS never pursued the appeal, the BIA summarily dismissed the appeal for failure to file the required brief on December 1, 2025. (ECF No. 34 at 5; ECF No. 13-1 at 23.)

On August 22, 2025, Petitioner filed a petition for writ of habeas corpus, asserting that his prolonged detention without a bond hearing violates his right to procedural due process. (ECF No. 1.) On October 24, 2025, Respondents filed an answer. (ECF No. 13.) The Court ordered the parties to file supplemental briefs. (ECF No. 14.) On February 9, 2026, Respondents filed a supplemental brief. (ECF No. 15.) That same day, Petitioner filed a motion for a temporary restraining order. (ECF No. 18.) On February 19, 2026, the Court appointed counsel for Petitioner. (ECF No. 20.)

On March 8, 2026, Petitioner filed a motion for temporary restraining order ("TRO") to restrain Respondents from removing Petitioner from the United States and detaining Petitioner outside the Court's jurisdiction because Respondents had moved Petitioner to Louisiana and were preparing to remove him to Moldova the following morning. (ECF No. 24.) On March 9, 2026, the Court issued a TRO prohibiting Petitioner's removal from the United States and ordered Respondents to transfer Petitioner back to the Eastern District of California. (ECF Nos. 26, 29.)

On March 19, 2026, Petitioner filed a first amended petition ("FAP") and supplemental brief. (ECF Nos. 34, 35.) On March 30, 2026, Respondents filed an answer. (ECF No. 37.) On April 6, 2026, Petitioner filed a traverse. (ECF No. 39.)

\\\

\\\

\\\

## II.

## DISCUSSION

### A.  Third Country Removal

Petitioner challenges Respondents' third country removal policy as violative of due process, the INA, the Convention Against Torture ("CAT"), and Administrative Procedure Act ("APA"). (ECF No. 34 at 10–14.) "In recent months, the Government's policy regarding third country removals has shifted substantially. In particular, policy memoranda issued on March 30 [the Noem Memo] and July 9 [the Lyons memo] by DHS have become frequently discussed in similar cases[.]" Escobar v. Chestnut, No. 1:25-cv-01801-DJC-EFB, 2025 WL 3687639, at *2 (E.D. Cal. Dec. 19, 2025).

> The Noem Memo provides two different tracks for removals of noncitizens to third countries, determined primarily by whether the third country in question "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." (Noem Memo at 10). In instances in which the United States "has received such assurances," which the Department of State "believes to be credible," then "the alien may be removed *without the need for further procedures.*" (*Id.* at 10-11) (emphasis added).

> In instances where the United States has *not* received such assurances – or has received assurances but "does not believe them to be credible" – ICE is required to follow a separate procedure. (*Id.* at 11). In those cases, ICE will "inform the alien of removal to that country" but "will not affirmatively ask whether the alien is afraid of being removed to that country." (*Id.*). Only where a noncitizen "affirmatively states a fear of removal" will they be referred to "screening for eligibility for protection under INA § 241(b)(3) and the Convention Against Torture (CAT) for the country of removal." (*Id.*). The Noem Memo provides further guidance as to those noncitizens who *do* affirmatively state a fear of removal to the third country. (*Id.*). It states that the noncitizen will generally be screened within twenty-four hours, after which USCIS "will determine whether the alien would be more likely than not to be persecuted on a statutorily protected ground or tortured in the country of removal." Where a noncitizen does not meet this standard, they "will be removed." (*Id.*). If the noncitizen meets this standard, then the matter will be referred to Immigration Court. (*Id.*). Where the individual in question "was previously in proceedings before the Immigration Court," the immigration officer will inform ICE, which "may file a motion to reopen with the Immigration Court or the Board of Immigration Appeals, as appropriate, for further proceedings" to determine eligibility for protection under INA § 241(b)(3) or CAT for the country of removal. (*Id.*).

> The Lyons Memo was issued in light of the Supreme Court's granting the Government's application to stay the district court's nationwide preliminary injunction in *D.V.D. v. Dep't of Homeland Security*, No. 25-10676, 2025 WL 1142968 (D. Mass. Apr. 18, 2025). (Lyons Memo at 13-14). In short, the Lyons Memos provides that "ICE must adhere to [the Noem Memo]." (*Id.* at 13). It reaffirms that, in instances where the United States has received credible diplomatic assurances that "aliens removed from the United States will not be persecuted or tortured," that the noncitizen "may be removed without the need for further procedures." (*Id.*). It reiterates that, "in all other cases," ICE is to notify the noncitizen of the intended country of removal and "will *not* affirmatively ask whether the alien is afraid of being removed to the country of removal." (*Id.*) (emphasis in original). It further provides that ICE "will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal[,]" but that such removal may be executed after six hours in "exigent circumstances[.]" (*Id.*). Where a noncitizen has not affirmatively stated a fear of persecution or torture "within 24 hours," then ICE "may proceed with removal to the country identified on the notice." (*Id.* at 14). The Lyons memo reiterates the procedure detailed in the Noem Memo for those noncitizens that do affirmatively express a fear of removal to the third country in question. (*Id.*).

Esmail v. Noem, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030589, at *1–2 (C.D. Cal. Sept. 26, 2025) (footnotes omitted).

    1.  8 U.S.C. § 1252(g)

Respondents argue that 8 U.S.C. § 1252(g) "strips district courts of authority to hear claims arising from the execution of removal orders" and divests this Court of jurisdiction over Petitioner's third country removal claims. (ECF No. 37 at 5.) Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). "[T]he express instructions of the Supreme Court, our precedent, and common sense . . . require us to read the statute narrowly." Arce v. United States, 899 F.3d 796, 800 (9th Cir. 2018). "[N]umerous courts in the Ninth Circuit have addressed this same jurisdictional argument and have found that while it is not within a district court's jurisdiction to

enjoin the government's execution of a lawful removal order, it is within the court's jurisdiction to prevent removal absent statutory and constitutional due process requirements." A.A.M. v. Andrews, 815 F. Supp. 3d 1124, 1134 (E.D. Cal. 2025). See Y.T.D. v. Andrews, No. 1:25-cv-01100 JLT SKO, 2025 WL 2675760, at *5 (E.D. Cal. Sept. 18, 2025) ("Though 8 U.S.C. § 1252(g), precludes this Court from exercising jurisdiction over the executive's decision to 'commence proceedings, adjudicate cases, or execute removal orders against any alien,' this Court has habeas jurisdiction over the issues raised here, namely the lawfulness of his continued detention and the process required in relation to third country removal."); Ortega v. Kaiser, No. 25-CV-05259-JST, 2025 WL 2243616, at *3 (N.D. Cal. Aug. 6, 2025) ("Ortega does not challenge the execution of the final removal order entered against him, which provided for his removal *only to El Salvador* and deferred his removal there in light of his CAT claim. Instead, Ortega challenges his potential detention or removal to a country *other* than El Salvador, for which there currently exists no final removal order. Accordingly, his claims do not challenge the Government's 'decision or action ... to ... execute removal orders,' and Section 1252(g) does not bar the Court's review of his claims."). Accordingly, the Court finds that 8 U.S.C. § 1252(g) does not bar Petitioner's third country removal claims.

2. D.V.D. Class Action

Respondents also argue that the Court should not consider Petitioner's third country removal claims "[b]ecause Petitioner is bound as a member of the non-opt out class of individuals governed by the *D.V.D.* nationwide preliminary injunction." (ECF No. 37 at 7.) "Despite the pending *D.V.D.* class action and the Supreme Court's stay of the injunction issued in that case, numerous courts in the Ninth Circuit have issued injunctive relief requiring identical, or substantially similar, third-country removal procedures as those articulated in the *D.V.D.* preliminary injunction." A.A.M., 815 F. Supp. 3d at 1135.

> Moreover, as a court in the Western District of Washington found in rejecting the same argument made by Respondents here, "a district court may not dismiss those allegations of the complaint which go beyond the allegations and relief prayed for in the class action." *Nguyen v. Scott*, 796 F.Supp.3d 703, 729 (W.D. Wash. 2025) (*citing Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)) (cleaned up). The court in *Nguyen* found that where a class

> action seeks "systemic reform of" a government policy, while the individual claim seeks "individual claims for injunctive relief related" to the plaintiff's mistreatment resulting from that policy, the individual claim is not barred by the class claim. *Nguyen*, 796 F.Supp.3d at 729 (citing *Pride*, 719 F.3d at 1137 ("Thus, we conclude that where a California prisoner brings an independent claim for injunctive relief solely on his own behalf for specific medical treatment denied to him, [the class action] does not bar the prisoner's claim for injunctive relief.") (citing cases)).

A.A.M., 815 F. Supp. 3d at 1135. The Court adopts the reasoning in A.A.M. and Nguyen and finds that the "class certification order in *D.V.D.* does not prevent this Court from adjudicating Petitioner's claims regarding third-country removal." Nguyen v. Scott, 796 F. Supp. 3d 703, 730 (W.D. Wash. 2025).

### 3. Due Process

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." Trump v. J. G.G., 604 U.S. 670, 673 (2025) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). "[A] basic tenet of constitutional due process [is] that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." Andriasian v. I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999). Thus, "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." Andriasian, 180 F.3d at 1041. Accord Ibarra-Perez v. United States, 154 F.4th 989, 995 (9th Cir. 2025) ("DHS must also 'notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported'; otherwise, DHS violates their constitutional right to due process." (quoting Andriasian, 180 F.3d at 1041)).

Respondents' third country removal policy, as set forth in the Noem and Lyon memos, "contravenes Ninth Circuit law, as laid out above. It would be impossible to comply both with Ninth Circuit precedent and the policy." Nguyen, 796 F. Supp. 3d at 728 (citations omitted). See Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6,

2025) ("ICE's policy is contrary to Ninth Circuit precedent."). Accordingly, Petitioner is entitled to habeas relief on this ground.

With respect to what process is due to a noncitizen who seeks to adjudicate a fear-based claim before removal to a third country, the Court finds A.A.M. instructive:

> Several decisions from the Western District of Washington, however, have more thoroughly analyzed the constitutionally proper process by which a noncitizen may seek to adjudicate his fear-based claim before removal to a third country. In *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash 2019) the court found that the noncitizen's right to due process in relation to his removal to a third country "includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." 409 F. Supp. 3d at 1010 (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001)). Accordingly, the court in *Aden* found, "[g]iving petitioner an opportunity to file a motion to reopen—a motion which seeks discretionary relief that may be denied without any sort of hearing—is not an adequate substitute for the process that is due in [the third country removal] circumstances." *Id.* Applying that analysis directly to the DHS Third Country Removal Policy, the court in *Nguyen v. Scott*, No. 25-cv-01398, 2025 WL 2419288 at *18 (W.D. Wash. Aug. 21, 2025), found the "requirements set forth in *Aden* flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country," "[t]hat Ninth Circuit precedent is binding on this Court," and "the application of that precedent in *Aden* is persuasive." 2025 WL 2419288 at *18. The court in *Nguyen* therefore issued a preliminary injunction finding that "Petitioner is likely to succeed on his claim that removal to a third country under [the DHS Third Country Removal Policy], without meaningful notice and *reopening of his removal proceedings for a hearing*, would violate due process." *Id.* at 19 (emphasis added).
>
> Further, in applying the holdings from *Aden* and *Nguyen*, the court in *Abubaka v. Bondi*, No. 25-cv-01889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025) determined "on the merits of petitioner's argument that due process does not allow respondents to 'remove or seek to remove him to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings.' " The court in *Abubaka* emphasized that even though DHS's Third Country Removal Policy replaced the policy at issue in *Aden*, the "ruling in *Aden* remains persuasive today and therefore this Court adopts its holdings in *Aden* for the purposes of this ruling ...." *Id.* at 7; *see also Baltodano v. Bondi*, No. 25-cv-1958-RSL, 2025 WL 2987766, at *4 (granting motion for temporary restraining order enjoining Petitioner's removal to third country "without notice and a meaningful opportunity to respond in compliance with statute and due process in reopened removal proceedings").

> This court finds these decisions from the Western District of Washington persuasive. Due Process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator. This requirement is not satisfied by simply providing Petitioner the time and opportunity to file a discretionary motion to reopen his immigration proceedings.

A.A.M., 815 F. Supp. 3d at 1140–41.

Accordingly, the Court will enjoin Respondents "from removing Petitioner via a third-country deportation to any country" if "Petitioner does assert a fear-based claim for relief from removal . . . without first providing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process." A.A.M. v. Andrews, No. 1:25-cv-01514-DC-DMC (HC), 2025 WL 3685159, at *7 (E.D. Cal. Dec. 19, 2025). See Arenado-Borges v. Bondi, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025) (enjoining government "from removing or seeking to remove Petitioner to a third country without notice and a meaningful opportunity to respond in reopened removal proceedings before an Immigration Judge.").

## B. **Zadvydas**

Petitioner challenges his prolonged detention on due process grounds, arguing that he "should be released or, at a minimum, provided an individualized bond hearing." (ECF No. 34 at 10.) Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,'[2] a noncitizen 'may be detained' or

---

[2] "The removal period begins on the latest of the following":
    (i) The date the order of removal becomes administratively final.

may be released under terms of supervision." Arteaga-Martinez, 596 U.S. at 575. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). "During the removal period, detention is mandatory." Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)).

Zadvydas, 533 U.S. at 701. "In Zadvydas, the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' and it further held that six months is a presumptively reasonable period." Jennings v. Rodriguez, 583 U.S. 281, 298–99 (2018) (internal citations omitted).

Here, the Court assumes without deciding that the removal period began on the "date the order of removal bec[ame] administratively final"—that is, on December 10, 2025 "[u]pon dismissal of an appeal by the Board of Immigration Appeals." 8 C.F.R. § 1241.1(a). Although Petitioner has been detained since June 13, 2024, his detention after the removal period commenced has not exceeded the presumptively reasonable six-month period. However, the "six-month presumption of reasonability under Zadvydas is 'just that—a presumption.'" Burunsuzyan v. Noem, No. 5:26-CV-00049-RGK-AGR, 2026 WL 246067, at *5 (C.D. Cal. Jan. 27, 2026) (quoting Clark v. Martinez, 543 U.S. 371, 387 (2005) (O'Connor, J., concurring)). "Such a presumption is not a 'prohibition on claims challenging detention less than six months.'" Burunsuzyan, 2026 WL 246067, at *5 (quoting Hoang Trinh v. Homan, 333 F. Supp. 3d 984, 993 (C.D. Cal., 2018)). "The central holding of Zadvydas is that section 1231(a)(6) does not permit detention beyond the initial 90-day removal period when removal is not reasonably foreseeable. At no point did the Zadvydas Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period." Hoang Trinh v. Homan, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) (citation omitted). Accord Ndandu v. Noem, No. 3:25-CV-02939-RBM-MSB, 2026 WL 25848, at *3 (S.D. Cal. Jan. 5, 2026) ("Multiple district courts have found that the six-month presumption is rebuttable.") (collecting cases).

Zadvydas "held that detention for less than six months was presumptively reasonable but left the lower courts to determine whether detention has 'exceed[ed] a period reasonably necessary to secure removal' in individual cases." Hoang Trinh, 466 F. Supp. 3d at 1092 (quoting Zadvydas, 533 U.S. at 699). "Accordingly, we must assess whether Petitioner has established enough evidence that his removal is not reasonably foreseeable." Burunsuzyan, 2026 WL 246067, at *5.

"Courts routinely find that noncitizens" who "cannot be removed to" the country listed in their removal orders and do "not have citizenship or significant ties to any other count[r]y, and [where] there is no evidence that any other country is willing to accept [a] third country removal under 8 U.S.C. § 1231(b)(2)(E)," "have met their initial burden under *Zadvydas*." Elshourbagy v. Bondi, 817 F. Supp. 3d 1102, 1109 (W.D. Wash. 2025) (collecting cases). Here, Petitioner cannot be removed to Kyrgyzstan, and it does not appear that Petitioner has citizenship or significant ties to any other country. Although Respondents appear to have attempted to remove Petitioner to Moldova in violation of the requirements of due process, as set forth in section II(A)(3), *supra*, Respondents have provided no evidence that Moldova is willing to accept Petitioner for a third-country removal under 8 U.S.C. § 1231(b)(2)(E).[3] "[T]hird country removal still requires the affirmative assent of the receiving country." Ndandu v. Noem, No. 3:25-cv-

[3] Respondents contend that "Petitioner had to be interviewed to get a travel document, and he did not express any fear at that time. Additionally, Petitioner still has not expressed a fear of removal to Moldova in any of his pleading since his removal to Moldova was halted by this Court." (ECF No. 37 at 3.) Respondents reference a "travel document" but have failed to provide a copy of the purported travel document to the Court. And in contrast to Respondents' contentions, the affidavit of Petitioner's counsel states in pertinent part:

> Petitioner informed me that he was given no notice, verbally or in writing, that the government intended to remove him to Moldova. Petitioner was never given any papers nor ever asked to sign anything. No government official spoke to him at all about the government's plan to remove him to Moldova, and he only learned that he was being sent to Moldova from another ICE detainee.
>
> Petitioner also informed me that he has no connections of any sort to Moldova, and he fears being sent to Moldova. He fears being persecuted there, and he fears that the Moldovan government will simply send him to Kyrgyzstan, where he has already established that he will be persecuted.
>
> Petitioner also said that he was never told anything about a "travel document" to Moldova, which the government, in its answer, now alleges they obtained. He was never interviewed nor even given any opportunity to speak at all.
>
> Petitioner also said that he was left completely in the dark about what was happening to him. He was left handcuffed to sleep on the floor of the airport.

(ECF No. 39-1 at 3.)

02939-RBM-MSB, --- F. Supp. 3d ----, 2026 WL 25848, at *5 (S.D. Cal. Jan. 5, 2026) (citing 8 U.S.C. § 1231(b)(2)(E)(vii)). "Even if Petitioner was to be removed to a third country, that process 'would require additional, lengthy proceedings' because of Petitioner's right to seek fear-based relief." Riveros Cadavid v. Dep't of Homeland Sec., No. EDCV 26-01805-KK-DTBX, 2026 WL 1105032, at *3 (C.D. Cal. Apr. 17, 2026) (quoting Ndandu, 2026 WL 25848, at *5). "Among other things, Petitioner 'likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings,' which 'further demonstrates that removal is not likely in the reasonably foreseeable future.'" Riveros Cadavid, 2026 WL 1105032, at *3 (quoting Ndandu, 2026 WL 25848, at *5).

Based on the foregoing and under Zadvydas, the Court finds Petitioner's continued detention is unreasonable and no longer authorized by statute.[4] Therefore, Petitioner should be released on appropriate conditions of supervision. See Zadvydas, 533 U.S. at 699–700; 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."); 8 C.F.R. § 241.5 (conditions for release after removal period).

**C. Attorney's Fees**

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (ECF No. 34 at 16.) The EAJA provides in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party

---

[4] Given this conclusion, the Court declines to address whether Petitioner's continued detention without a bond hearing violates due process.

is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412 (d)(1)(A)–(B). The Court will consider an application from Petitioner requesting and substantiating reasonable fees and costs under the EAJA that is filed within thirty days of the judgment.

### III.

### ORDER

Based on the foregoing, the Court HEREBY ORDERS that:

1. The first amended petition for writ of habeas corpus (ECF No. 34) is GRANTED on Count One;

2. Petitioner's motion for temporary restraining order (ECF No. 18) is DENIED as moot;

3. Respondents **SHALL IMMEDIATELY RELEASE** Petitioner Mukhamadii Abduvakhidov (A-Number: 249-263-680) under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5;

4. Respondents are **ENJOINED AND RESTRAINED** from re-detaining Petitioner unless and until they follow all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures; and

5. Respondents are **ENJOINED AND RESTRAINED** from effectuating Petitioner's third country removal unless Respondents adhere to the following procedures:

   a. Provide Petitioner and his counsel with written notice in a language Petitioner can understand;

   b. Provide Petitioner and his counsel a minimum of fourteen (14) days to raise a fear-based claim for protection prior to removal; and

c. If Petitioner does assert a fear-based claim for relief from removal, Respondents must provide Petitioner a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process;

6. Within **TWO (2) days** of the date of service of this order, counsel for Respondents SHALL file a status report to confirm that Petitioner has been released; and

7. The Clerk of Court is DIRECTED to:

a. Serve a copy of this order on the California City Detention Center; and

b. CLOSE the case.

IT IS SO ORDERED.

Dated:    **May 12, 2026**                        /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE